**Josefina Gonzalez BATOON, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**Nos. 82–7002, 82–7384.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 8, 1983.*

Decided May 31, 1983.

---

* Oral argument is waived by unanimous agreement of the panel. Fed.R.App.P. 34(a).

Paul Bovarnick, Oregon Legal Services Corp., Hillsboro, Or., for petitioner.

Lauri Steven Filppu, Dept. of Justice, Washington, D.C., for respondent.

Before WRIGHT, CHOY, and SKOPIL, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Batoon has petitioned for review of two decisions of the Board of Immigration Appeals (BIA). She contends that in its denial of suspension of deportation it did not consider all the evidence and construed extreme hardship too strictly. She contends that in its denial of her motion to reopen the proceedings it disregarded and distorted portions of the evidence.

FACTS

Batoon, a 56-year-old native and citizen of the Philippines, entered this country in 1969 as a visitor for pleasure. She came here to convince a sick uncle who lived in Conrad, Montana to return to the Philippines. When he refused, she decided to stay and care for him, and became co-owner of his home.

In 1973 Batoon's uncle died and she became the sole owner of the home. To repay funeral debts, she moved to Los Angeles to find work but returned to Conrad in 1977, and has lived there since, working at clerical jobs. She has not received public or private relief or assistance while in this country.

Batoon now lives with her cousin in her late uncle's home. She works as a clerk for the Conrad Water Department. Affidavits attesting to her good character and good reputation in the community were submitted. She has relatives in the United

States, but her immediate family remains in the Philippines.

In 1971 Batoon was found deportable, based on overstaying her visa. Between 1970 and 1979 five private bills were introduced in Congress on her behalf, but none was enacted.

In 1979 Batoon's motion to reopen the proceedings was granted. Her application for suspension of deportation was denied in April 1981. In December of that year the BIA dismissed her appeal from that decision. Batoon's 1982 motion to reopen the proceedings on the ground of newly discovered evidence was denied and she has petitioned for review of the last two decisions.

## I. *Suspension of Deportation*

Batoon may avoid deportation and be admitted for permanent residence if she (1) has been present in this country for at least seven years immediately preceding her application, (2) is of good moral character, and (3) is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to her. 8 U.S.C. § 1254(a)(1). There is no dispute that the first two requirements have been met. Batoon challenges the BIA's determination that extreme hardship was not established.

■ The BIA may construe extreme hardship narrowly. *INS v. Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). When it denies suspension of deportation, it must give reasons showing that it has considered all relevant factors. *Prapavat v. INS,* 662 F.2d 561, 562 (9th Cir.1981). Our inquiry is limited to whether the BIA abused its discretion, exercising it in a way that was arbitrary, irrational, or contrary to law. *Santana-Figueroa v. INS,* 644 F.2d 1354, 1355–56 (9th Cir.1981).

■ The BIA found that the emotional trauma of uprooting Batoon after long-term residence in this country was not an unusual hardship. It concluded that difficulty that she may encounter in finding similar employment in the Philippines did not constitute extreme hardship. *See Car-*nalla-Munoz v. INS, 627 F.2d 1004, 1006 (9th Cir.1980).

Batoon contends that the BIA should have granted suspension because the Immigration judge improperly relied on the fact that her presence was the result of introduction of private bills in her behalf. *See Asimakopoulos v. INS,* 445 F.2d 1362 (9th Cir.1971). The judge's decision was based on Batoon's failure to meet the statutory eligibility standards, without consideration of the private bills. His statement that he would have considered them in exercising his administrative discretion is irrelevant.

We conclude that the BIA did not abuse its discretion in denying suspension of deportation.

## II. *Motion to Reopen*

■ An alien may move to reopen proceedings on the ground that circumstances occurring after the deportation order establish extreme hardship. *INS v. Wang,* 450 U.S. at 140–41, 101 S.Ct. at 1029; 8 C.F.R. § 3.2 (1980). The motion may be granted if a prima facie case of eligibility is established. *Wang,* 450 U.S. at 141, 101 S.Ct. at 1029.

■ We review a denial of a motion to reopen for abuse of discretion. *Reyes v. INS,* 673 F.2d 1087, 1089 (9th Cir.1982). The BIA may not act in any way that is arbitrary, irrational, or contrary to law. *Id.* It must consider all relevant factors cumulatively in deciding whether extreme hardship has been established. *Prapavat v. INS,* 662 F.2d at 562.

The government argues that the board's recitation of a "brief procedural history" shows that it "obviously considered" all the evidence. However, the board's discussion of hardship reflects consideration only of medical hardship. It did not consider an important aspect of that evidence.

In reviewing a BIA decision for abuse of discretion, we have required that its stated reasons evidence its consideration of all relevant factors. *Id.* Cursory, summary, or conclusory statements are inadequate. *Id.; accord Ravancho v. INS,* 658 F.2d 169, 175 (3d Cir.1981).

■ Our rationale for requiring articulation of the bases for denial of suspension of deportation applies equally to motions to reopen:

> To affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion.

*Santana-Figueroa v. INS,* 644 F.2d at 1357. We may not assume that factors not mentioned have been considered by the board.

■ It considered affidavits of two physicians, one of them a psychiatrist, that Batoon's health probably will suffer serious deterioration if she is deported. It noted that her hyperthyroidism and hypertension would be aggravated and that she would suffer stress. It concluded that extreme hardship was not established because adequate care is available in the Philippines.

The board apparently ignored the psychiatrist's opinion that deportation probably will result in effects requiring long-term psychiatric hospitalization, at the least. Evidence of that unusual hardship should have been considered independently of the adequacy of available care in the Philippines. *See Phinpathya v. INS,* 673 F.2d 1013, 1016 (9th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 291, 74 L.Ed.2d 275.

The board erred in ignoring this important aspect of the medical evidence and in not considering Batoon's evidence of social and economic hardship.

The denial of the application for suspension of deportation is AFFIRMED. The denial of the motion to reopen is REVERSED and REMANDED for proper consideration.